UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 3:12CR 211 (SRU) |
| | : | |
| v. | : | |
| | : | VIOLATION: 18 U.S.C. § 1516 |
| TODD ROBERTS | : | [Obstruction of a Federal Audit] |

INFORMATION

The United States Attorney charges:

COUNT ONE
(Obstruction of a Federal Audit)

At all times relevant to this Information:

Introduction

1. The defendant, TODD ROBERTS ("ROBERTS"), owned and operated Roberts Physical and Aquatic Therapy ("RPAT"), a physical therapy practice located at 210 Main Street, Old Saybrook, Connecticut. ROBERTS was a physical therapist licensed to practice by the State of Connecticut.

2. ROBERTS and RPAT were participating providers in the federal Medicare program, and submitted claims to Medicare for physical therapy and other services rendered to Medicare beneficiaries.

3. From approximately January 31, 2008 to January 31, 2009, RPAT submitted claims to Medicare for services and received over $100,000 in Medicare payments during that one-year period.

4. The Medicare program contracted with the New England Benefit Integrity Service Center ("NEBISC") to provide program safeguard contract work. As part of NEBISC's duties, NEBISC routinely provided audits and integrity oversight of Medicare providers in Connecticut.

5. On or about January 23, 2009, NEBISC contacted RPAT and advised that NEBISC was performing an audit of RPAT's practice. NEBISC provided RPAT with a list of ten patient files to be produced for the audit, and arranged to meet with RPAT personnel concerning the audit on January 30, 2009, and to obtain the patient files.

6. On January 29, 2009, ROBERTS instructed an RPAT employee to telephone NEBISC and postpone the audit. The employee falsely informed NEBISC that the requested records were stored at an offsite location and that RPAT employees had been unable to photocopy the requested records.

7. During the January 29, 2009 telephone call, ROBERTS also spoke to the NEBISC, and falsely stated that the requested records were stored at an offsite location fifteen minutes away from RPAT's office. In fact, RPAT did not have an offsite storage facility.

8. On January 29, 2009, NEBISC rescheduled the audit for February 6, 2009, and informed RPAT that NEBISC would visit the offsite location on February 6, 2009. NEBISC also requested additional patient records.

9. On or about February 5, 2009, ROBERTS instructed an RPAT employee to rent a storage unit at a U-Store-It facility in Old Saybrook, Connecticut. ROBERTS then moved or caused to be moved patient records to the storage unit.

10. During this delay from January 29 to February 6, 2009, ROBERTS instructed an RPAT employee to materially alter and augment the patient files that were subject to the NEBISC audit. The employee and ROBERTS created patient progress notes detailing patient treatments in an attempt to substantiate services for which claims had been submitted without the entry of a contemporaneous note at the time of service. The altered notes also falsely made it appear that the

Medicare beneficiaries had received direct, one-on-one services from a licensed physical therapist.

11. On February 6, 2009, NEBISC auditors interviewed ROBERTS and several RPAT employees. ROBERTS did not disclose that the patient progress records had been altered, or that the storage unit had been secured on or about February 5, 2009.

### ROBERTS' Obstruction of A Federal Audit

12. From between approximately January 29 and February 6, 2009, in the District of Connecticut, ROBERTS, with the intent to deceive and defraud the United States, endeavored to influence, obstruct, and impede NEBISC employees who were federal auditors in the performance of official duties as defined in Title 18, United States Code, Section 1516(b)(1), relating to RPAT, an entity receiving in excess of $100,000, directly and indirectly, from the United States in the one-year period from February 1, 2008 to January 31, 2009 pursuant to RPAT's provider agreement with the Medicare program; that is, ROBERTS intentionally delayed the audit so that he could materially alter and augment Medicare patient files to add patient progress notes for dates of service when no such note existed, and create details of patient treatments in an attempt to substantiate services for which claims had been submitted to Medicare, and make it appear as though Medicare beneficiaries had received direct, one-on-one services from a licensed physical therapist, when in fact some of the services had not been provided directly one-on-one for the entire time period indicated as required by Medicare and had been rendered by unlicensed auxiliary personnel.

All in violation of Title 18, United States Code, Section 1516.

UNITED STATES OF AMERICA

_____
DEIRDRE M. DALY
ATTORNEY FOR THE UNITED STATES
ACTING UNDER AUTHORITY CONFERRED BY 28 U.S.C. § 515

_____
DAVID J. SHELDON
ASSISTANT UNITED STATES ATTORNEY